**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

CAROL KATHREIN, individually and on behalf
of all others similarly situated,

      *Plaintiff,*

  vs.

ARCADIA CONSUMER HEALTHCARE INC.,
a Delaware corporation,

      *Defendant.*

**Case No.:**

**Jury Trial Demanded**

**CLASS ACTION COMPLAINT**

Plaintiff CAROL KATHREIN, individually and on behalf of all others similarly situated, brings this action based upon personal knowledge, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation of her attorneys.

**NATURE OF THE ACTION**

1.    Defendant Arcadia Consumer Healthcare Inc. is a corporation headquartered in Bridgewater, New Jersey, that, among other things, manufactures and sells consumer healthcare products.

2.    Defendant sells to retailers for resale certain healthcare products, including products for hair and scalp care, digestive health, vitamins, minerals, and supplements, first aid, oral care, cough and cold, and foot care.[1] Among Defendant's most successful products is its line of Fungi-Nail products sold in Pen, Ointment, and Liquid forms (the "Fungi-Nail products"). Fungi-Nail products are sold by dozens of retailers throughout Illinois and across the United States.

---

[1] Defendant categorizes the Fungi-Nail products in its "foot care" line of products, as do retailers. *See* https://arcadiach.com/foot-care/(last accessed Dec. 6, 2024).

  

3. Many consumers, including Plaintiff, bought the Fungi-Nail products for the purpose of treating nail fungus, based on the product's name and other advertising that suggests that the product is intended to treat, and effective at treating nail fungus.[2]

4. However, after buying the products based on the false impression that it "CURE[S] AND PREVENT[S]" "NAIL" "FUNGI" with "MAXIMUM STRENGTH" efficacy and applying it to their nails, consumers do not experience any improvement in their health as it relates to the presence of nail fungus.

5. Despite the name "Fungi-Nail," which suggests that the products are intended to treat, and effective at treating nail fungus, the products contain fine print on a back label disclaimer indicating that the product is *not* meant to treat nail fungus, nor is it effective at doing so.[3]

6. Defendant was aware that many consumers do not read some of the products' back label fine print that disclaims the name's assertion and other front-label representations, and was aware its Fungi-Nail products have no ability to treat nail fungus, yet it proceeded to make those claims on the products' front labels, creating the clear impression that such treatment is possible.

---

[2] As the graphics make clear, the misleading representations are substantially similar on the packaging for the liquid, pen and spray.

[3] *See, e.g.,* https://funginail.com/faqs/why-does-the-fungi-nail-labeling-say-not-effective-on-nails-and-scalp-if-it-is-called-fungi-nail/(last accessed Dec. 6, 2024).

The product labels are therefore materially misleading by plainly giving the impression that they treat nail fungus. Hundreds of thousands of consumers have purchased these products with the false belief that they treat nail fungus. Because the Fungi-Nail products do not and cannot treat nail fungus, purchasing consumers have been misled.

7.      As a result of Defendant's deceptive and misleading practices, Plaintiff and the Class members were induced to purchase Fungi-Nail products that do not perform as advertised. Defendant has made millions of dollars in fraudulent sales to individuals who Defendant told were receiving a product that is capable of treating nail fungus. Defendant's customers did not receive the benefit of their bargain because the Fungi-Nail products do not treat nail fungus.

**THE PARTIES**

8.      Plaintiff Carol Kathrein ("Kathrein") is an Illinois citizen residing in Machesney Park, Illinois. On or about July 2024, Plaintiff Kathrein purchased a one-ounce bottle of Maximum Strength Fungi-Nail Anti-Fungal Liquid, from the foot care section of Walgreens located at 1680 West Lane Rd, Machesney Park, Illinois 61115 for approximately $13.00. Plaintiff Kathrein has regularly applied the product to her nails from the date of purchase, with no improvement to her nail fungus condition.

9.      Plaintiff would not have purchased Defendant's Fungi-Nail products if she knew that Fungi-Nail does not treat nail fungus.

10.     Plaintiff continues to suffer from chronic nail fungus and expects to purchase an over-the-counter product for nail fungus in the near future. Plaintiff regularly shops at Walgreens at 1680 West Lane Road, Machesney Park, Illinois, and other Illinois retailers that sell Fungi-Nail products, and she will encounter Fungi-Nail products during those shopping trips. Plaintiff would purchase Fungi-Nail in the future if Defendant corrected the challenged conduct by reformulating the product so that it is effective for nail fungus and accurately labeling it for that use. If Defendant continues selling the current formulation, Plaintiff needs a clear and conspicuous front-label disclosure that the product does not treat nail fungus so she can avoid being misled at the point of sale. Because Defendant continues to use the Fungi-Nail name, antifungal positioning, nail imagery, and fungus-killing representations without a clear front-label correction, Plaintiff cannot

3

determine from the current front label whether the product has been corrected, reformulated, or remains ineffective for nail fungus. Plaintiff therefore faces a real and immediate risk of future harm, including being misled again or being unable to rely on the product's label when deciding whether to purchase.

11. Defendant Arcadia Consumer Healthcare Inc. ("Arcadia") is a Delaware corporation with its principal offices located in Bridgewater, New Jersey. Arcadia does substantial business, including selling its health products, in Illinois, and also in the Northern District specifically.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiff, Illinois citizen, brings this action on behalf of a proposed class of similarly situated individuals against Defendant, a corporation incorporated and with its principal place of business outside the State of Illinois. The amount in controversy exceeds $5,000,000, and the proposed class includes more than 100 members.

13. Venue is appropriate in the Northern District under 28 U.S.C. § 1391 because, among other things: (a) Plaintiff Kathrein resides within the Northern District; (b) Plaintiff purchased the product in the Northern District; and (c) many of the acts and omissions that give rise to the claims for relief alleged in this action took place in the Northern District.

## FACTUAL ALLEGATIONS

14. Plaintiff is an individual who purchased a Fungi-Nail product at Walgreens. When Plaintiff purchased the product, the product's name "Fungi-Nail" suggested that it is a healthcare product intended for the medical treatment of nail fungus. In addition, the front label reads in white capitalized font against a bright red background "Kills Fungus" ("front label claim").

15. The packaging contains qualifying language on non-front panels, including "This product is not effective on the scalp or nails" and, on certain packaging, "Not for nail or scalp fungus." Those statements do not appear on the principal display panel, are not tied to the challenged front-label representations by an asterisk, callout, or other front-label indicator, and are not presented to consumers in a clear and conspicuous manner at the point of purchase. Plaintiff

4

did not see those non-front-panel statements before purchasing because the product was displayed front-facing in the foot-care section. In any event, the non-front-panel language contradicts rather than clearly qualifies the principal-display-panel message created by the Fungi-Nail name, antifungal positioning, nail imagery, "Clinically Proven to Cure and Prevent Fungal Infections," and "Kills Fungus" representations.

16.     Plaintiff read these statements on the product labels and relied on them when purchasing the products. Plaintiff believed that the claim "Kills Fungus" for a product named "Fungi-Nail" meant that the product kills all fungus, including, and especially, nail fungus, including toenail fungus.

17.     The statement created a false impression. As Arcadia admits, the product does not kill nail fungus.

18.     Plaintiff purchased the product believing that it would kill nail fungus. She applied the product continuously over a period of several months with no improvement to the fungus on her nails. Plaintiff received a product that was in fact proven to not kill nail fungus. Plaintiff did not get the product that was advertised.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action on her own behalf and pursuant to Federal Rule of Civil Procedure 23. Plaintiff intends to seek certification of a class defined as follows (collectively "the Classes" or "the Class members"):

> All persons residing in the State of Illinois who purchased the Fungi-Nail products during the period beginning four years from the date of the filing of the original Complaint to the date of class certification.

20.     Excluded from the Classes are: (a) Defendant, including any entity in which the Defendant has a controlling interest, any parent or a subsidiary of, or which is controlled by Defendant; (b) the officers, directors, and legal representatives of Defendant; and (c) the judge and the court personnel in this case as well as any members of their immediate families. Plaintiff reserves the right to amend the definition of the Class(es) if discovery, further investigation and/or rulings by the Court dictate that it should be modified.

21.     *Numerosity*. The members of the Classes are so numerous that the joinder of all Class members is impractical. While the exact number of Class members is unknown to Plaintiff at this time, given the amount of Defendant's Fungi-Nail products sold in Illinois, it stands to reason that the number of Class members is at least in the thousands. Class members are readily identifiable from information and records in Defendant's possession, custody, or control, such as account information and sales records.

22.     *Commonality and Predominance*. There are questions of law and fact common to Class members, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a.      Whether Defendant's products contain the name "Fungi-Nail" and whether the products' labels contain the claim "Kills Fungus";

b.      Whether Defendant's product labeling created the impression among their customers that their product would kill nail fungus;

c.      Whether a reasonable person would have read the statements "Fungi-Nail" and "Kills Fungus" and any accompanying language to mean that the products had been scientifically proven to kill nail fungus;

d.      Whether the "ANTI-FUNGAL" product kills nail fungus;

e.      Whether it has been scientifically proven that the product kills nail fungus;

f.      Whether Defendant knew or should have known that it had not been scientifically proven that the product fails to kill nail fungus;

g.      Whether Defendant knew or should have known that the products do not kill nail fungus;

h.      The nature of the relief, including equitable relief, to which Plaintiff and Class members are entitled; and

i.      Whether Plaintiff and Class members are entitled to damages, civil penalties and/or injunctive relief.

23.     *Typicality*. Plaintiff's claims are typical of those of other Class members because Plaintiff, like the other Class members, purchased "Fungi-Nail" products that claimed, "Kills Fungus," but would not in fact kill nail fungus.

24.     *Adequacy of Representation*. Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer class actions, and Plaintiff intends to prosecute this action vigorously. Plaintiff and Class members have a unified and non-conflicting interest in pursuing the same claims and obtaining the same relief. Therefore, all Class members will be fairly and adequately represented by Plaintiff and her counsel.

25.     *Superiority of Class Action*. A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court. Damages for any individual Class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.

26.     Class certification is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class members, such that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## FIRST CAUSE OF ACTION

### (Fraud)

### (Illinois Class)

27.     Plaintiff repeats and incorporates herein by reference each and every allegation above as if set forth fully herein.

28.     Reasonable consumers buy antifungal products in the foot-care section to kill fungus on their feet and toenails. A reasonable consumer would not purchase a product named

7

"Fungi-Nail" for a purpose other than killing fungus, including nail fungus.

29.     Defendant markets and sells products through mass retailers. Front-label statements are a material part of consumer purchasing decisions for products sold in drug stores and supermarkets.

30.     Defendant represented to Plaintiff and the Class that Maximum Strength Fungi-Nail Anti-Fungal Liquid, 1 oz. kills nail fungus. Defendant labeled and marketed the Product with uniform front-label statements, including "Kills Fungus" (the "Front Label Claim"). In context with the "Fungi-Nail" name, this message would lead a reasonable consumer to believe the Product is proven to kill nail fungus.

31.     The representations were false because the Product is not capable of killing nail fungus as represented.

32.     Defendant knew the Product does not kill nail fungus yet has refused to change the "Fungi-Nail" name or add a clear front-label disclosure that the Product does not kill nail fungus. Defendant chose to keep the misleading message to drive sales.

33.     Defendant could have selected accurate front-label wording but chose not to. By using the word "Nail" in the product name, selling the Product in the foot-care section, and printing "Kills Fungus" in bold, capital letters, Defendant intended consumers to believe the Product kills nail fungus. The statements were false when made.

34.     Ordinary consumers lack expertise in microbiology and do not know that treatments effective on skin fungus may not treat nail fungus.

35.     Defendant knew, or was aware of facts showing, that the Product does not kill or treat nail fungus. Defendant formulated or controlled the Product, selected or approved its active ingredients, controlled the Product's labeling and directions, and included or authorized non-front-panel language stating that the Product is not effective on nails and, on certain packaging, is not for nail or scalp fungus. Those facts contradicted the front-label net impression created by the "Fungi-Nail" name, antifungal positioning, nail imagery, and "Kills Fungus" statement. Defendant nevertheless continued to use that front-label presentation without a clear and conspicuous front-label disclosure that the Product does not kill or treat nail fungus.

36.     Defendant's knowledge is further supported by consumer complaints, product formulation records, ingredient information, sales and marketing materials, and other information within Defendant's possession showing that consumers purchased the Product for nail fungus even though the Product does not kill or treat nail fungus.

37.     Reasonable consumers do not second-guess prominent front-label claims by hunting for fine-print qualifications on the back of a package, especially when the brand appears trustworthy.

38.     Defendant knew the "Kills Fungus" message, as applied to nail fungus, was false. Defendant possessed testing, internal documents, regulatory materials, consumer complaints, ingredient information, and enforcement history contradicting the claim that the Product kills nail fungus.

39.     Defendant intended Plaintiff and Class members to rely on the Front Label Claim. Defendant placed the statement on the front label to induce purchases, and knew a reasonable consumer would read "Kills Fungus" with the "Fungi-Nail" name to mean the Product kills nail fungus.

40.     The "Kills Fungus" message is a claimed product attribute. Defendant intended reasonable consumers to treat that attribute as a material benefit, namely that buying the Product would treat and cure nail fungus.

41.     Plaintiff Carol Kathrein saw "Kills Fungus" and the "Fungi-Nail" name on the Product label at Walgreens, 1680 West Lane Rd, Machesney Park, Illinois 61115 in July 2024. She read and relied on those statements in deciding to purchase. She would not have purchased the Product, or would have paid less, had she known the truth that the Product does not kill nail fungus.

42.     Plaintiff and Class members purchased the Product because of the uniform front labels at the point of sale and online. Defendant's uniform labeling and marketing reached purchasers across Illinois in a substantially similar manner.

43.     Because the Product is not capable of killing nail fungus, reasonable consumers are misled and deceived by Defendant's packaging and labeling.

44. Plaintiff and Class members were harmed when they purchased a Product that does not kill nail fungus. Their nail fungus conditions were not treated by the Product. They paid money they otherwise would not have paid.

45. A clear front-label disclosure that the Product does not kill nail fungus would have materially reduced consumers' willingness to purchase the Product and would have affected the price they were willing to pay.

46. Plaintiff's and Class members' reliance on Defendant's representations was a substantial factor in causing their harm. Had they known the truth, they would not have purchased the Product or would have paid less.

47. As a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and Class members suffered damages in an amount to be proven at trial. Damages include the difference between the price paid and the value of the Product as received without the represented attribute, and other reasonably incurred out-of-pocket losses.

48. Because the Product does not kill nail fungus, the challenged representations misled consumers, and Plaintiff suffered the damages described above.

49. Defendant's conduct was willful, wanton, and in conscious disregard of the truth. Plaintiff seeks punitive damages where permitted by Illinois law.

## SECOND CAUSE OF ACTION

### (Fraudulent Concealment and Omission)

### (Illinois Class)

50. Plaintiff repeats and incorporates herein by reference each and every allegation above if set forth fully herein.

51. Defendant made uniform front-label representations about the Product, including "Kills Fungus," together with the product name "Fungi-Nail." These are the "Affirmative Statements."

52. The Product is not capable of killing nail and toenail fungus as represented. That fact is material to consumers deciding whether to purchase the Product and how much to pay.

53. Defendant did not disclose, clearly and conspicuously on the front label or at the point of sale, that the Product does not kill nail fungus and does not treat onychomycosis. Defendant also did not disclose known limits in the Product's ability to reach or act within the nail plate.

54. A duty to speak arose because:

    a. Defendant made partial and misleading Affirmative Statements that created a false impression about nail fungus efficacy, which required full and fair disclosure of the Product's inability to kill nail fungus.

    b. Defendant possessed superior and exclusive knowledge about the Product's lack of efficacy against nail fungus, and consumers did not have access to that information.

    c. Defendant chose to speak about antifungal efficacy and therefore had a duty not to omit facts necessary to make its statements not misleading when made.

55. Defendant knew the omitted facts. Defendant possessed and reviewed internal testing and development records, ingredient specifications that do not achieve fungicidal activity in the nail plate, regulatory materials that limit antifungal claims, and sustained consumer complaint data showing lack of effect on nail fungus.

56. Defendant selected prominent front-label claims that conveyed nail fungus efficacy and withheld a clear front-label disclosure of the Product's inability to kill nail fungus. Any contrary information, if it existed, was relegated to back-label fine print and non-prominent locations that consumers do not typically review at the point of purchase.

57. Defendant concealed and omitted these material facts in order to induce consumers, including Plaintiff, to rely on the overall message of nail fungus efficacy and to purchase the Product at the price charged.

58. Plaintiff Carol Kathrein saw and relied on the front-label "Kills Fungus" statement and the "Fungi-Nail" name, and she was not provided a clear and conspicuous front-label disclosure that the Product does not kill nail fungus, when she purchased Maximum Strength

11

Fungi-Nail Anti-Fungal Liquid, 1 oz. at Walgreens, 1680 West Lane Rd, Machesney Park, Illinois 61115, in or about July 2024. Had the omitted facts been disclosed, she would not have purchased the Product or would have paid less.

59. Plaintiff's reliance was justifiable. The omission concerned a core performance attribute. The front label contained the statements a reasonable consumer would see and credit at the point of purchase. No clear front-label disclosure corrected the misleading impression created by the Affirmative Statements.

60. As a direct and proximate result of Defendant's concealment and omissions, Plaintiff suffered damages. Plaintiff paid money for a Product that lacked the represented and implied ability to kill nail fungus, including a price premium over the Product's true value.

61. Plaintiff's damages include the difference between the price paid and the value of the Product as received without the omitted attribute, together with other reasonably incurred out-of-pocket losses.

62. Defendant's concealment and omissions were intentional and in conscious disregard of the truth. Plaintiff seeks punitive damages where permitted by Illinois law.

63. Defendant's uniform front-label statements, and the failure to provide a clear front-label disclosure, reached purchasers across Illinois through in-store shelf presence and online listings.

## THIRD CAUSE OF ACTION

**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.)**

**(Illinois Class)**

64. Plaintiff repeats and incorporates herein by reference each and every allegation above if set forth fully herein.

65. Defendant is engaged in trade or commerce in Illinois within the meaning of 815 ILCS 505/1(f). Defendant markets, labels, advertises, distributes, and sells the Product to consumers in this state.

66. Defendant made uniform front-label and marketing statements about the Product,

12

including "Kills Fungus," together with the product name "Fungi-Nail." These statements conveyed that the Product kills nail and toenail fungus. These are the "Challenged Representations."

67. The Challenged Representations were false or misleading. The Product is not capable of killing nail fungus as represented. Any contrary or qualifying language was not clear and conspicuous on the front label and did not cure the overall impression at the point of purchase.

68. Defendant's conduct was deceptive or unfair under 815 ILCS 505/2. The Challenged Representations were likely to deceive reasonable consumers and concerned a material performance attribute.

69. The deception occurred in Illinois at retail stores and through online listings directed to Illinois consumers. Defendant placed and maintained the Challenged Representations to drive sales and price.

70. Plaintiff Carol Kathrein saw the front-label "Kills Fungus" statement and the "Fungi-Nail" name at Walgreens, 1680 West Lane Rd, Machesney Park, Illinois 61115, in or about July 2024, and purchased the Product.

71. The deception was a direct and proximate cause of each purchase.

72. Plaintiff paid money for a Product that lacked the represented ability to kill nail fungus. Plaintiff paid a price premium over the Product's true value. The measure of damages includes the difference between the price paid and the value of the Product received without the represented attribute, along with other reasonably incurred out-of-pocket losses.

73. Defendant's uniform front-label and marketing statements reached purchasers across Illinois through in-store shelf presence and online listings. Common questions include whether the Challenged Representations are deceptive or unfair, whether they are material, and whether a price premium resulted. ICFA does not require proof of individualized reliance for a private claim. Predominance is satisfied because liability turns on the uniform label and common proof of price impact and causation.

74. Plaintiff paid approximately $13 for a product represented to kill nail fungus. Because the product does not treat nail fungus, the product was worth materially less than the price paid to Plaintiff and other consumers purchasing it for nail fungus treatment. A clear front-label

13

disclosure that the product is not effective on nails would materially reduce demand and market price because nail-fungus efficacy is a core reason consumers purchase a product named Fungi-Nail from the foot-care section.

75.     Plaintiff seeks an order enjoining Defendant from making the Challenged Representations and requiring clear and conspicuous front-label disclosure that the Product does not kill nail fungus, along with corrective advertising as appropriate.

76.     Plaintiff seeks attorneys' fees and costs under 815 ILCS 505/10a(c), together with pre- and post-judgment interest.

77.     Plaintiff requests judgment awarding actual damages, restitution or disgorgement where permitted, injunctive and declaratory relief, attorneys' fees and costs under 815 ILCS 505/10a(c), interest, and any further relief the Court deems just and proper.

## FOURTH CAUSE OF ACTION

**(Breach of Express Warranty, 810 ILCS 5/2-313, with remedies under 810 ILCS 5/2-714, 5/2-715, and limitations under 5/2-719)**

**(Illinois Class)**

78.     Plaintiff repeats and incorporates herein by reference each and every allegation above if set forth fully herein.

79.     Defendant is a merchant and manufacturer with respect to the Product. Defendant designs and approves the Product's labeling and packaging, and it markets and places the Product into the stream of commerce for retail sale in Illinois.

80.     Defendant made affirmations of fact and promises about the Product that became part of the basis of the bargain. These include the front-label statement "Kills Fungus," together with the "Fungi-Nail" name and substantially similar uniform claims. These are the Express Warranties.

81.     The Express Warranties warranted that the Product kills fungus, including nail and toenail fungus, and that the Product possesses the performance attributes represented on the labeling and marketing.

82.     Plaintiff purchased the Product in Illinois. Plaintiff Carol Kathrein purchased the

14

Product at Walgreens, 1680 West Lane Rd, Machesney Park, Illinois 61115, in or about July 2024. The Express Warranties were part of the basis of her bargain.

83. The Product failed to conform to the Express Warranties. The Product is not capable of killing nail fungus as warranted.

84. Plaintiff provided reasonable pre-suit notice of breach within a reasonable time after discovery, consistent with 810 ILCS 5/2-607(3)(a). On September 23, 2025, Plaintiff, through counsel, sent a written notice of breach by U.S. Certified Mail, return receipt requested, to Walgreens, the retail seller, at the store where Plaintiff purchased the Product, and to Walgreen Co.'s Legal Department. The notice identified Plaintiff, the Product, the Walgreens purchase location, the approximate purchase date, the label representations at issue, and the breach, including that the Product did not conform to affirmations of fact and promises on the label and did not kill nail fungus as represented. The same notice was sent to Arcadia through its registered agent and separately gave Arcadia notice of breach for label-based express warranties. Plaintiff requested cure, including a refund, class-wide resolution discussions for Illinois purchasers, cessation of the challenged claim, and corrective measures. Defendant and Walgreens had an opportunity to cure and failed or refused to provide an adequate cure.

85. Any purported disclaimer or limitation that attempts to negate the Express Warranties is ineffective under 810 ILCS 5/2-316(1). Such language conflicts with the specific affirmations on the front label, is not clear and conspicuous, and does not mention "warranty" in a way that negates an express affirmation that formed the basis of the bargain.

86. Any purported limitation of remedy fails of its essential purpose under 810 ILCS 5/2-719, because it would leave Plaintiff without a fair remedy for a nonconforming product that cannot deliver the warranted antifungal performance.

87. To the extent privity is required, it is satisfied because Plaintiff purchased from Defendant or its authorized retailers acting as Defendant's agents. In the alternative, Plaintiff is an intended third-party beneficiary of Defendant's direct express warranties to Illinois consumers made through the Product's labeling and advertising, which were designed to induce consumer purchases and formed part of the basis of the bargain.

88. As a direct and proximate result of the breach, Plaintiff suffered actual damages under 810 ILCS 5/2-714, including the difference between the value of the Product as warranted and the value of the Product as received, and incidental and consequential damages under 810 ILCS 5/2-715 where allowed.

89. Plaintiff seeks judgment for damages, incidental and consequential damages where permitted, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

### FIFTH CAUSE OF ACTION

**(Breach of Implied Warranty of Merchantability, 810 ILCS 5/2-314, with remedies under 810 ILCS 5/2-714 and 5/2-715, and limitations under 810 ILCS 5/2-316, 5/2-607, and 5/2-719)**

**(Illinois Class)**

90. Plaintiff repeats and incorporates herein by reference each and every allegation above if set forth fully herein.

91. Defendant is a merchant and manufacturer with respect to the Product. Defendant designs, labels, markets, and sells the Product to consumers in Illinois in the ordinary course of business.

92. An implied warranty of merchantability arose by operation of law under 810 ILCS 5/2-314 because Defendant is a merchant of goods of this kind.

93. The implied warranty guaranteed, at minimum, that the Product would pass without objection in the trade and would be fit for its ordinary purposes. The ordinary purpose includes the performance represented on the labeling and container.

94. The Product was not merchantable at the time of sale. The Product is not fit for its ordinary purposes because it does not perform as an over-the-counter antifungal product that kills nail fungus. The Product also fails to conform to affirmations of fact on the label and container, including the "Fungi-Nail" name and "Kills Fungus," within the meaning of 810 ILCS 5/2-314(2)(f).

95. Plaintiff purchased the Product in Illinois for ordinary consumer use. Plaintiff Carol

16

Kathrein purchased the Product at Walgreens, 1680 West Lane Rd, Machesney Park, Illinois 61115, in or about July 2024.

96.     The lack of merchantability existed when the Product left Defendant's control and persisted through retail sale.

97.     Plaintiff provided reasonable pre-suit notice of breach within a reasonable time after discovery, consistent with 810 ILCS 5/2-607(3)(a). On September 23, 2025, Plaintiff, through counsel, sent a written notice of breach by U.S. Certified Mail, return receipt requested, to Walgreens, the retail seller, at the store where Plaintiff purchased the Product, and to Walgreen Co.'s Legal Department. The notice stated that the Product was not fit for its ordinary purpose as represented because it did not kill nail fungus as conveyed by the label. The same notice was sent to Arcadia through its registered agent and demanded cure. Defendant and Walgreens had an opportunity to cure and failed or refused to provide an adequate cure.

98.     Any attempted disclaimer of the implied warranty is ineffective. Any disclaimer conflicts with the specific affirmations on the front label, is not clear and conspicuous, does not mention "merchantability" as required by 810 ILCS 5/2-316(2), and is unconscionable or otherwise unenforceable under the circumstances.

99.     Any purported limitation of remedies fails of its essential purpose under 810 ILCS 5/2-719 because it would leave Plaintiff without a fair remedy for a nonconforming product that cannot deliver the implied-warranted performance.

100.    Privity. To the extent privity is required for economic loss, it is satisfied because Plaintiff purchased from Defendant or from authorized retailers acting as Defendant's agents. In the alternative, Plaintiff is an intended third-party beneficiary of contracts between Defendant and its authorized retailers, where Defendant's labeling and warranties were directed to and intended to induce purchases by consumers like Plaintiff. In the further alternative, Defendant sold directly to Illinois consumers through its online channels during the class period.

101.    As a direct and proximate result of the breach, Plaintiff suffered actual damages under 810 ILCS 5/2-714. These damages include the difference between the value of the Product as warranted by law and the value of the Product as received. Plaintiff also seeks incidental and

consequential damages under 810 ILCS 5/2-715 where allowed.

102.     Plaintiff seeks judgment for damages, incidental and consequential damages where permitted, pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION

**(Unjust Enrichment, pled in the alternative to ICFA and warranty claims)**

**(Illinois Class)**

103.     Plaintiff repeats and incorporates herein by reference each and every allegation above if set forth fully herein.

104.     Plaintiff conferred a monetary benefit on Defendant by paying the purchase price of the Product. The benefit includes revenues Defendant received from sales through its retail channels and online storefronts, including proceeds remitted to Defendant by its authorized retailers.

105.     Defendant knew of and appreciated this benefit. Defendant designed, labeled, marketed, distributed, and sold the Product for profit and tracked sales and revenues from Illinois purchasers.

106.     Defendant accepted and retained the benefit under circumstances that make retention inequitable. The Product did not have the attributes represented on the label and in marketing, including the "Fungi-Nail" name and the "Kills Fungus" claim, and it lacked the ability to kill nail fungus as conveyed at the point of sale.

107.     Plaintiff Carol Kathrein purchased the Product at Walgreens, 1680 West Lane Rd, Machesney Park, Illinois 61115, in or about July 2024, and paid money that inured to Defendant's benefit through Defendant's retail distribution chain.

108.     Plaintiff and Illinois purchasers did not receive the full value of what they paid for. They paid a price premium, or paid money, for a Product that lacked the represented performance attribute. Equity and good conscience do not permit Defendant to retain the amounts obtained from these sales.

109.     Privity is not required for this claim. To the extent a direct benefit is required, it is

satisfied because Defendant received revenues from the challenged sales through its authorized retailers and online channels. In the alternative, the benefit was conferred directly through purchases from Defendant's online storefront during the class period.

110. Plaintiff lacks an adequate remedy at law at this stage for the unjust retention of monies paid for a nonconforming Product. This claim is pled in the alternative to legal and statutory claims and should proceed unless and until an adequate legal remedy is determined to exist and fully compensates the unjust retention.

111. As a direct and proximate result of Defendant's inequitable retention of the benefit, Plaintiff suffered monetary loss measured by the difference between the price paid and the value received, as well as other out-of-pocket losses.

112. Plaintiff seeks restitution and disgorgement of all monies unjustly retained by Defendant from the sale of the Product to Plaintiff and the Illinois Class, together with pre- and post-judgment interest, costs, and such other relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief as follows:

a. Compensatory damages in an amount to be proven at trial.

b. Restitution or disgorgement where permitted by law, in an amount to be proven at trial.

c. Disgorgement of all monies by which Defendant was unjustly enriched through the sale of the mislabeled Product.

d. Injunctive and declaratory relief, including an order requiring Defendant to cease the challenged representations and to remove false or misleading statements from its product and packaging.

e. Damages under the Uniform Commercial Code, including the difference in value and incidental and consequential damages where allowed.

f. Attorneys' fees and costs under 815 ILCS 505/10a(c), and other applicable law.

g. The establishment of a constructive trust or common fund for the benefit of the Class as the Court finds appropriate.

h.  Pre-judgment and post-judgment interest, costs, and any further equitable relief the Court deems just and proper.

i.  Punitive damages where permitted by Illinois law.

j.  Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated:  May 28, 2026                                        Respectfully submitted,

                                        /s/ Thiago M. Coelho
                                        Thiago M. Coelho
                                        **WILSHIRE LAW FIRM, PLC**
                                        660 S. Figueroa Street, Sky Lobby
                                        Los Angeles, California 90017
                                        Telephone: (213) 381-9988
                                        Email: *thiago.coelho@wilshirelawfirm.com*

                                        *Attorney for Plaintiff and the Proposed Classes*

20